# TAYLOR *v.* FOWLER.

1. Where a party executes a promissory note for the purchase-price of land and receives a bond for title, binding the vendor to convey upon the payment of the note, the note and the bond for title make a complete written contract; and where a suit is brought upon such a note the maker can not set up in defense that at the time of the making of the contract she and the payee, or vendor, agreed in parol that under certain circumstances and conditions the parties would have a right to rescind the trade and restore the status. A plea setting up this defense is one in effect seeking to vary and contradict a written contract by evidence of a contemporaneous parol agreement. This can

not be done in the absence of a mutual mistake in the writing, or fraud upon the part of the other party to the contract.

2. One who purchases land, giving his note for the purchase-price thereof, and enters into possession of the land, can not, when sued upon the note, prevent judgment by showing an outstanding title in a third party, without showing that his vendor is a non-resident or insolvent, or some other good equitable cause. But if the vendor is insolvent, the purchaser should be allowed to prove that fact to prevent the collection of the note, where he has offered to rescind the trade and surrender possession.

No. 3487. May 21, 1923.

Complaint. Before Judge Kent. Laurens superior court. October 7, 1922.

J. M. Fowler, brought suit on a series of notes against Mrs. J. H. Taylor, alleging that these notes, having been made payable to L. B. Carnes, were transferred by Carnes to plaintiff; and he alleged that, default having been made in the payment of the first of the series of notes, all of the notes thereby became due and collectible. To this petition Mrs. J. H. Taylor filed her plea, admitting the execution of the notes, but denying that J. M. Fowler was an innocent purchaser for value of said notes before due. The defendant further set up, that the notes sued on were given for the purchase of certain farm lands in Cobb County, Georgia; that it was the agreement between Carnes and defendant that she was to give him notes for the sum of $10,000 and a deed to a certain house and lot in the City of Marietta; that the notes signed by her and the bond for title given her at the same time by Carnes did not embody the entire contract; that she was to go into possession of the farm on the first day of January, 1921, after the trade was made in the month of August, 1920, and that the defendant might, at any time within twelve months after she went into possession of the farm, turn back to Carnes the farm lands, and then in this event Carnes agreed to turn back to defendant the notes and property in Cobb County, equal to the value of the house and lot in Marietta deeded by defendant to Carnes; that in keeping with this agreement defendant did not go into possession of the farm lands until the first of January, 1921; that in the meantime Carnes had taken possession of the house and lot in Marietta and sold same for $6,000 or other large sum; that defendant, after she went into possession of the farm lands on the first of January, 1921, about the month of May authorized her brother to call upon Carnes and demand that he carry out his agreement with ref-

erence to taking back the farm property, but Carnes then refused to do this; that later the defendant, realizing that she had been imposed upon, offered to turn back to Carnes the farm land, provided he would return to her the notes which she had given him, agreeing to lose the house and lot in Marietta, but this Carnes refused to do; and that Fowler, the plaintiff, was not an innocent purchaser for value before due of said notes, but understood fully the trade between Carnes and defendant, and was only acting for Carnes. To this plea the plaintiff filed his demurrer, asking that the plea be stricken and judgment be returned for the plaintiff.

Defendant then offered an amendment to her original plea, in which she set up the following: At the time she traded with Carnes it was agreed between them and made a part of the contract that Carnes was to have all the rents and profits from the farm land for the year 1920; and in keeping with this agreement Carnes did receive the profits of the land for the year 1920. It was further agreed and made a part of the contract between them, that in the event defendant elected to exercise her rights under the contract and turn back the farm lands to Carnes by the first day of January, 1922, then Carnes was to receive the rents and profits from the land for the year 1921 and defendant to receive the rents from the city property in Marietta; and in keeping with this agreement Carnes rented the farm to one Haney for the year 1921. Defendant went in person to see Carnes about the 6th of October, 1921, and offered to turn back the farm lands according to the agreement, but Carnes refused to accept the farm land and return to her her notes and turn back the Marietta property, as he had agreed to do. Then defendant offered to lose the city property in Marietta and turn back the farm to him, provided he would give defendant her notes. This Carnes refused to do; and the excuse Carnes made to defendant for not carrying out his original agreement was that he claimed that defendant had only until the first of August to exercise her option to turn back the farm lands; and he absolutely refused to live up to his agreement with defendant. At the time the contract was made with Carnes, at which time notes were given by her, she was mistaken as to the law, and she believed that a promise made by Carnes which was not in writing was as binding as the written notes and the bond for title given in connection with same. She gave the

notes and accepted the bond for title without exercising the care that she ordinarily would have done to read the same, because she really did not think the writing would be taken as any more of.the contract than the oral agreement made between her and Carnes, who, with the intent to take advantage of her ignorance of law and her mistaken impression of the binding force of an oral agreement when there is also a written agreement, fraudulently made his promise to take back the property and relieve defendant of liability on the notes, intending not to keep his agreement, relying on his superior advantages and knowledge of the law to take advantage of her ignorance of the law. She has had very little experience in transactions or business matters of any kind; and whatever trading and business she has done she has always had to rely on some one with better knowledge of law and business transactions. Carnes knew all this when he traded with her, and, knowing, used his knowledge to take advantage of her. Carnes drafted the bond for title and prepared the notes, and, instead of embodying in them the entire contract, drew them to suit himself, well knowing that defendant in her ignorance would not detect the fact that she was being taken advantage of, and would not know that all the stipulations of the contract ought to be in writing, hoping thereby to gain advantage to himself, to the disadvantage and hurt of defendant; all of which said action and conduct of Carnes constituted fraud on his part to her injury.

Defendant alleged that she would not have signed the notes and made the trade with Carnes had she not believed she had the right to turn back the farm lands and get back her notes from Carnes and the Marietta property at any time within a year from the first of January, 1921; and that Carnes knew this at the time. She further alleged (paragraph 5), that Carnes, at the time he traded with her, did not have title to the farm lands in Cobb County referred to, and never has had title to the same; that he knew, when he gave defendant his bond for title, that it was not and could not be a lien binding the land, but was worth nothing more than he might be worth personally; that he did not then have any deed to the lands and has not since obtained a deed to them; that he can not make title to defendant in the event the notes are paid, and he is insolvent and unable to answer in damages to defendant in case she should pay the notes and he should fail

to make title to the land to her; and that Fowler, the plaintiff, well knew all these facts when he obtained the notes,— he knew that Carnes had no title to the land and could not and did not bind the lands by giving his bond for title. Defendant prayed that the contract be reformed to speak the truth of the contract as hereinbefore set out, so that the conditions therein be annexed to and made a part of the note sued on.

Of the amendment offered by the defendant only paragraph 5, just stated, was allowed. The defendant filed exceptions pendente lite to the order of the judge disallowing the rest of the amendment. The case proceeded to trial before a jury; and upon the conclusion of the evidence the judge directed a verdict for the plaintiff. The defendant excepted also to this ruling.

*Roger D. Flynt,* for plaintiff in error.

*Anderson & Roberts,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. The court properly sustained the demurrer to the part of the answer contained in the amendment, in which the defendant attempted to set up and plead the parol agreement between herself and her vendor, Carnes, under the terms of which certain rights were given to both of the parties, and in which it was stipulated that under and upon certain conditions the defendant would be entitled to a rescission of the contract for the purchase of the lands in question. The contract between the parties was complete when the defendant executed the notes for the purchase-price of the land and received the bond for title. She can not engraft upon this contract an additional supplementary contract in parol, which varies, contradicts, and in effect renders nugatory the complete written contract. Nor is the defendant entitled to a reformation of the contract. Fraud in the procurement of it upon the part of her vendor is not shown, nor is there such mutual mistake shown in the drawing of the contract as entitles her to reformation. Though the defendant thought that the parol contract which she pleads could be set up to vary or destroy and rescind the written contract, such ignorance of the law will not avail to destroy a valid written contract not procured by fraud nor drawn by mistake. What the defendant pleads is ignorance of the law, and not such a mistake of law as would enable a court of equity to afford the relief sought.

2. Error is assigned in two grounds of the motion for a new trial upon rulings of the court which excluded evidence of the insolvency of the defendant's vendor, Carnes. The title to this land, under the evidence in the case, is shown to be in Fowler, the plaintiff in this suit. Carnes had Fowler's bond for title, conditioned to convey the land upon the payment of Carnes' notes to the amount of $11,500. Whether Carnes had paid any of this $11,500 or not is not disclosed by the evidence. Presumptively the entire amount was still due Fowler. If Carnes is insolvent and there is a paramount outstanding title, as appears from this evidence, then the plaintiff could have set up these facts as a defense to the notes had Carnes himself brought suit upon them. And where the notes had been sold and transferred to a third party, the same defense could be made against such transferee, though the notes were purchased before maturity, where such transferee took with notice that the notes were given for the purchase-price of land and the transferee knew that the payee of the notes did not have title to the land and was insolvent. But it is replied in this case that Fowler, the man who is bringing suit, is himself the owner of the land and is willing to make title upon the payment of the notes. If so,— that is, if he is willing to make title upon the payment of these notes, he should have pleaded his readiness to make title upon recovery of judgment and the satisfaction of the same by the defendant. He did not do so, though he intimates in his evidence a willingness to execute deeds to the land when Carnes's debt to him is paid. Under these facts it may be that having obtained this judgment, with knowledge of the fact that the notes were given for the purchase of the land, and under his statement in his evidence, he would be estopped from questioning in any future suit the title of this defendant in case she should pay the judgment against her. But the defendant is entitled either to have the contract rescinded or to have a deed upon the payment of the purchase-price. It may be that if Fowler should recover judgment in this suit the amount of the judgment would not satisfy the notes of Carnes, which amount to $11,500, and the owner could not be compelled to execute a deed of conveyance to the land until Carnes's notes for the purchase-price of the land were satisfied. Consequently, as the pleadings and the evidence stood, it was error to exclude evidence of the insolvency

of the vendor of the defendant. But complete justice may be done in this case, if, before the remittitur of this court is made the judgment of the court below, or within ten days thereafter, the plaintiff will file an amendment to his action, offering, upon payment of the judgment recovered in this suit of the full amount of defendant's notes, to execute a deed of conveyance to her; then the plaintiff shall have judgment against the defendant, and the court in the decree and judgment entered up shall provide for the execution of such conveyance upon the payment by the defendant of the amount recovered by the plaintiff. If the plaintiff so amends, a judgment and decree shall be taken in favor of the plaintiff in accordance with the ruling made above; otherwise, the judgment refusing a new trial is reversed, so that the case may be heard again.

*Judgment reversed, with direction. All the Justices concur.*