Argued October 10, affirmed November 20, 1923.

## M. W. WALKER *v.* L. L. HEWITT.

(220 Pac. 147.)

**Vendor and Purchaser—Giving of Note for Purchase Price, at Execution of Contract, is Independent Covenant.**

1. Giving of a negotiable note for the purchase price of land, even at the time of execution of the contract, is an independent covenant.

**Pleading—Allegation That Contract to Execute Deed and Promissory Note were Independent Covenants Held Conclusion of Law.**

2. Allegation that a contract to execute a deed and a promissory note executed by the defendant purchaser were independent covenants *held* a mere conclusion of law.

**Pleading—Allegation That Plaintiff Could not Convey to Purchaser Held Legal Conclusion.**

3. Allegation by defendant purchaser that plaintiff, vendor's assignee, at the time of the commencement of the action upon a note given for the purchase price of the lot to be conveyed, could not convey the property to defendant, *held* a legal conclusion.

**Pleading—Plea of Abatement must be Certain.**

4. Section 74, Or. L., recognizing pleas in abatement, has made no change in the requisites of such pleas at common law, one of which is that the plea must be absolutely certain.

**Pleading—Plea in Abatement must have Effect of Giving Plaintiff a Better Writ.**

5. A plea in abatement must not only point out plaintiff's error but must show him how it may be corrected, and furnish him

with the materials for avoiding the same mistake in another suit in regard to the same cause of action.

**Pleading—Answer Held not Good Plea in Abatement.**

6. In an action on a note executed by defendant purchaser for purchase price of land, defendant's plea alleging that plaintiff, vendor's assignee, did not, before the commencement of the action, tender deed to defendant, and that plaintiff was unable to make a conveyance of the character required by the contract, and concluding with a general prayer, as is usual in a plea in bar, that plaintiff's action be dismissed, and that defendant recover costs, and not that plaintiff's action abate, *held* not a good plea in abatement.

**Pleading—Plea of Abatement Should be Complete, and Demand a Judgment of Abatement.**

7. Section 74, Or. L., while permitting plea in abatement and plea in bar to be joined in the same answer, does not dispense with the necessary rule that a plea in abatement should be complete in itself, and that it should demand a judgment of abatement.

**Vendor and Purchaser—Contract Held not to Make Conveyance and Payment of Note Concurrent Acts—"First."**

8. Under a contract that, if purchaser should "first" make payment, vendor would convey, payment and the execution of the deed were not concurrent acts, but payment was to precede the execution of the conveyance, especially where purchaser gave a note for the deferred payments, thus indicating an intent to make an independent contract in respect to payment, and the purchaser was entitled under the contract to immediate possession of the property; "first" not meaning "coincident with" or "at the same moment" either in law or in logic.

**Vendor and Purchaser—Buyer Entitled to Immediate Possession, Where Contract Provided for Re-entry.**

9. Where a contract to convey provided for re-entry by the vendor in case of purchaser's default in payment of purchase-money note, the purchaser was entitled to immediate possession.

**Vendor and Purchaser—Covenant to Pay Purchase Price, if Originally Independent, Remains so.**

10. It is not the law that a covenant to pay, if originally independent, becomes dependent if the vendor allows installments to run without collection until the last one is due, and, in any event, such a rule cannot apply where the purchaser has given a negotiable note for the whole price.

From Multnomah: GEORGE R. BAGLEY, Judge.

Department 2.

This was an action brought to recover on a promissory note made and executed by the defendant on

July 19, 1913, whereby, for value received, he agreed and promised to pay to the order of Clarissa M. Sandifur $600 in gold coin, with interest at the rate of 8 per cent, payable monthly, together with a reasonable attorney's fee in case suit or action should be instituted for the collection of the note if the same should not be paid in accordance with its terms. The complaint alleged nonpayment of the note, excepting as follows: October 24, 1913, $20; December 2, 1913, $40; January 12, 1914, $10; January 19, 1914, $10; May 11, 1914, $20; December 23, 1914, $50; July 1, 1917, $4; leaving a balance due of $753. It was alleged that Clarissa M. Sandifur had assigned the note to plaintiff before the commencement of the action.

After various demurrers, motions to strike out and amended answers, the defendant finally pleaded the following answer: For a first defense he denied every allegation of the complaint. For a second defense he alleged that about July 19, 1913, Clarissa M. Sandifur and F. M Sandifur were husband and wife, and that on about said date Mrs. Sandifur was the owner in fee of lot 2 in block 16, Barview, Tillamook County, Oregon. That on said July 19, 1913, defendant entered into a contract with Mrs. Sandifur and her husband, which contract is set forth *haec verba* and is as follows:

"Articles of Agreement, Made this the 19th day of July in the year of our Lord One Thousand Nine Hundred and Thirteen.

"Between Mrs. Clarissa M. Sandifur and F. N. Sandifur, her husband, the parties of the first part, and L. L. Hewitt of Independence, Oregon, the party of the second part,

"Witnesseth, That if the party of the second part shall first make the payment and perform the cove-

nants herein mentioned on his part to be made and
performed, the said parties of the first part hereby
covenant and agree to convey and assure to the
said party of the second part, in fee simple clear of
all encumbrances whatever by a good and sufficient
warranty deed, the lot, piece or parcel of ground
situated in the County of Tillamook and State of
Oregon known and described as follows: The south-
east one-half of lot 2 in block 16 in Bar View, 'a
townsite recorded in the records of Tillamook County,
Oregon.

"And the said party of the second part hereby
covenant and agree to pay to the said parties of
the first part of the sum of six hundred, fifty and
no/100 dollars in the manner following, $50, thereof
on the signing of this agreement, and the balance
thereof by paying $20, or more, thereof on the 1st
day of September, 1913, and the sum of $20, or more,
on the first day of each and every month thereafter
until the said sum of $650, shall have been fully
paid as aforesaid, and for which said second party
has given her note this day with interest at the rate
of 8 per centum per annum, payable on the first
day of each month when said installments are paid
as aforesaid, on the whole sum remaining from time
unpaid, and to pay all taxes, assessments or imposi-
tions that may be legally levied or imposed upon
said land subsequent to the year 1912. And in case
of the failure of the party of the second part to make
either of the payments or any part thereof or per-
form any of the covenants on his part hereby made
and entered into, this contract shall, at the option
of the parties of the first part, be forfeited and de-
termined, and the party of the second part shall for-
feit all payments made by him on this contract, and
such payment shall be retained by the said parties
of the first part in full satisfaction and in liquida-
tion of all damages by them sustained, and they
shall have the right to re-enter and take possession
of the premises aforesaid, without any recourse to
law.

"It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract, and that all covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

"In Witness Whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written.

"Mrs. Clarissa M. Sandifur.
"F. N. Sandifur.
"L. L. Hewitt.

"Signed, sealed and delivered in the presence of
"B. F. Swope.
"Lena E. Hewitt."

It was further alleged that the instrument sued on by plaintiff in his amended complaint is referred to in the foregoing instrument, and that said instruments were executed concurrently by and between the same parties, concerning the same subject matter, and were mutually dependent, each instrument referred to being a part of one entire agreement between the parties. That the note sued upon by plaintiff in his amended complaint arose out of the transaction on which the defendant relies for his defense. That subsequently the Sandifurs, for a valuable consideration, conveyed by warranty deed, subject to said agreement, the southeast one half of said lot 2 to M. W. Walker, the plaintiff herein, by a deed which was duly recorded in the records of Tillamook County; and at the same time and for the same consideration, delivered to plaintiff the agreement herein recited and the instrument sued upon by plaintiff in this action, and the plaintiff accepted the assignment with notice and knowledge of and subject to the agreement. The answer then set up

the defendant's idea of what the substance of the agreement was, which it is unnecessary to repeat here, the agreement being already set forth. It was further alleged that at the time this action was begun and at all times thereafter, and for a long time prior thereto, and at all times when tender of conveyance of said real property was due defendant by plaintiff, as provided for by said agreement, or otherwise, plaintiff could not convey to defendant the southeast one half of said lot 2 in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed, or otherwise. That at all times herein mentioned plaintiff has failed to convey said lot 2 in block 16, in Barview, a townsite recorded in the records of Tillamook County, to the defendant in fee simple, clear of all encumbrances whatever, by good and sufficient warranty deed, as required by said agreement, or otherwise. That plaintiff has failed at all times to perform, fulfill or comply with the covenants by him, the plaintiff, to be performed under said agreement.

Then follows a further and second defense which practically repeats the first defense, with the addition of this allegation:

"That prior to institution of this action this plaintiff did not tender to defendant a conveyance of said southeast one half of lot 2, block 16, a townsite recorded in the records of Tillamook County, Oregon, in fee simple clear of all encumbrances whatever by a good and sufficient warranty deed as in said agreement provided or otherwise.

"That subsequent to filing of this action, the plaintiff tendered a purported conveyance of said real property into court. That defendant seasonably objected to said tender and specified his objections to the said instrument so tendered and to the property

described therein. That this defendant objects to said tender, purported conveyance and property for the reason that said tender was not made before this action was brought or at the time required by said agreement to be made or otherwise; and for the further reason that at the time said tender was made into court and at the time conveyance of said real property by plaintiff to defendant was required by said agreement or otherwise, and at all times since said action was instituted, this plaintiff was not able to tender a conveyance of the southeast one half of lot 2, block 16, in Bar View, a townsite recorded in the records of Tillamook County, Oregon, to defendant in fee simple clear of all encumbrances whatever by good and sufficient warranty deed."

Plaintiff replied, admitting the execution of the contract set out in paragraph 1 of defendant's amended answer, except that L. L. Hewitt is a party therein, and not Mrs. L. L. Hewitt. Plaintiff admits that said contract was executed between the Sandifurs and L. L. Hewitt about July 19, 1921 *(sic)*, and that Mrs. Sandifur was at that time the owner of lot 2, aforesaid, and that by virtue of said agreement the Sandifurs agreed to sell and Hewitt agreed to buy the southeast one half of said lot. Admits that the promissory note was executed at the same time as the aforesaid agreement, as a part of the agreement for the purchase and sale of said real property, and as a separate and independent covenant on the part of the defendant to pay the purchase price thereof. Admits the transfer from the Sandifurs to the plaintiff, and admits that plaintiff received the agreement and promissory note with full knowledge of their contents. Admits that each installment of both principal and interest, as provided in said promissory note, became due and payable long prior to the institution of this action, and that

plaintiff seeks to recover from the defendant the entire balance of said purchase price, as evidenced by said promissory note. Denies each and every other allegation of the first further and separate amended answer.

As a further and separate reply to the defendant's first further and separate amended answer and defense plaintiff alleges: (1) That at the time of the execution of the contract the defendant entered into the possession of the said premises and has ever since had possession and the right to possession thereof; and (2) that plaintiff has been at all times since said assignment of said contract and promissory note ready, able and willing to execute a good and sufficient deed of conveyance, conveying the said premises to the defendant in accordance with the terms of said contract, thereby conveying a fee-simple title to the said premises, clear of all encumbrances whatsoever, except taxes, assessments and impositions that may have been legally levied or imposed upon said land subsequent to the year 1912; but defendant has never at any time tendered payment of the balance due upon said promissory note, nor has he ever at any time demanded such deed. It is further alleged that shortly after the commencement of this action plaintiff duly executed a warranty deed, conveying the said premises to defendant, and tendered the same to the defendant and deposited the said deed with the clerk of the court for the use and benefit of the defendant, and that plaintiff has at all times since maintained, and does now maintain the said tender by keeping said deed on deposit with said clerk. The reply to defendant's second further and separate amended answer practically covers

the same ground as the preceding reply and need not
be further set forth.

Defendant moved to strike out certain paragraphs
of the reply on the ground that they could not be
properly pleaded in the reply, and, this motion be-
ing overruled, the case came on for trial. Both par-
ties moved for a directed verdict, and the court di-
rected a verdict in favor of the plaintiff for the
amount claimed. From this judgment the defend-
ant appeals.                              AFFIRMED.

For appellant there was a brief over the names of
*Mr. Eugene Brookings, Mr. Frank H. Hilton* and
*Mr. W. W. Dugan,* with an oral argument by *Mr.
Brookings.*

For respondent there was a brief over the names
of *Mr. Wm. P. Richardson* and *Mr. F. M. Saxton,*
with an oral argument by *Mr. Ben H. Conn.*

McBRIDE, C. J.—1. The main question under dis-
cussion here is whether or not the plaintiff can main-
tain this action without first tendering a deed to the
property described in the contract. The answer to
this contention is that, by giving a negotiable promis-
sory note, defendant in the first instance elected to
rely upon the responsibility of the seller as a means
of compelling him to execute his part of the contract.
It is not the frequent case of an action upon a con-
tract of sale of real estate where the mutual cove-
nants of the parties are contained in the same in-
strument. Such a contract, while assignable, is not
negotiable. The giving of a negotiable promissory
note for the purchase price, even at the time of exe-

cution of the contract, is an independent covenant; whether failure to pay it at maturity so alters its effect that it becomes a dependent covenant will be considered hereafter.

2, 3. It is clear to the mind of the writer that in either view the plaintiff was not required, as a matter of pleading, to declare on the contract, but on the note, and that, if the matters set up in the defendant's separate answer have any efficacy whatever, they must, as a matter of pleading, be set forth defensively or in abatement. The first defense pleaded in the answer is a denial of the execution of the note sued upon. The second attempted defense substantially admits the execution of the note, but claims that it was executed as a part of the contract heretofore quoted and that the contract to execute the deed and the promissory note were dependent covenants, which is stating a mere conclusion of law, as both instruments speak for themselves. The allegation in paragraph 5 of the "first further and separate amended answer," that plaintiff at the time of the commencement of this action could not convey to defendant the real property described in the contract of sale, is a mere legal conclusion, not the statement of a fact. The further allegation that plaintiff has failed so to convey has some of the elements of a plea in abatement, but whether pleaded in abatement or in bar does not appear. The same may be said of the second further defense. It is alleged, in substance, that plaintiff did not, before the commencement of this action, tender to defendant the deed called for in the contract of sale, and that he was unable to do so; that subsequent to the filing of this action he tendered a purported conveyance into court, to which defendant objected for

the reason that such tender was made after the action was brought, and for the further reason that at the time of the commencement of this action or at the time said conveyance was required by the contract, or otherwise, plaintiff was not able to make such conveyance of the property by warranty deed, in fee simple, clear of all encumbrances. Here, again, it does not appear whether the defendant is attempting to plead these facts in bar or in abatement.

4-6. Pleas in abatement are expressly recognized by our Code: 1 Olson's Or. L., p. 269, § 74. And, except that the section referred to allows such matter to be pleaded in the same answer with pleas to the merits, our statute has made no change in the requisites of such pleas at common law. One of these requisites is that the plea must be absolutely certain. It is a dilatory plea and not favored in law.

" * * The criterion or leading distinction between a plea in abatement and a plea in bar is, that the former must not only point out the plaintiff's error, but must show him how it may be corrected, and furnish him with the materials for avoiding the same mistake in another suit in regard to the same cause of action; or in technical language it *must give plaintiff a better writ. * * "* 1 Chitty on Pleadings, pp. 462, 463; *Settle* v. *Settle,* 10 Humph. (Tenn.) 504; *Mandel* v. *Peet,* 18 Ark. 236.

7. The plea here does not do this. It does not allege a state of facts, pursuant to which plaintiff might maintain his cause by tendering a deed before bringing another action, but, on the contrary, asserts in substance that it was impossible for plaintiff to have made a conveyance of the character required by the contract, and does not conclude with a prayer that plaintiff's action abate. The general prayer at the end of the complaint is the usual one in

bar, that plaintiff's action be dismissed and that defendant recover costs. While Section 74, *supra,* permits pleas in abatement and pleas in bar to be joined in the same answer, it has not attempted to dispense with the necessary rule that a plea in abatement should be completed in itself, and that it should demand a judgment of abatement, which this plea does not do: *Jenkins* v. *Pepoon,* 2 Johns. Cas. (N. Y.) 312.

8. 9. But, aside from the mere technical objection to the form of the plea, we hold that it is defective in substance for the reason that by the very terms of the contract of sale the payment and the making of the deed were not concurrent acts, but, on the contrary, payment was to precede the execution of the conveyance. The contract recites "that if the party of the second part [the defendant] shall first make payment," etc. While there is some contradiction in the authorities, we are inclined to follow those which hold that the word "first," as here used, should be given its ordinary meaning, and that payment should precede the execution of the conveyance, especially where, as in this case, a negotiable promissory note is given for the deferred payments. This was so held in an early English case reported in 2 Barnewall & Adolphus, 74, where practically the same question was presented, Lord TENTERDEN, C. J., saying:

"Where, by one and the same instrument, a sum of money is agreed to be paid by one party, and a conveyance of an estate to be at the same time executed by the other, the payment of the money and the execution of the conveyance may very properly be considered concurrent acts, and in that case no action can be maintained by the vendor to recover the money until he executes or offers to execute a

conveyance; but here the vendee by a distinct instrument agreed to pay part of the purchase money on the 2d of February. I can see no reason why he should have executed a distinct instrument whereby he promised to pay a part of the purchase-money on a particular day, unless it was intended that he should pay the money on that day at all events. In the cases cited, the concurrent acts were stipulated for in the same instrument: (a) here the payment of the 200 pounds (which was part only of the purchase money) was separately provided for.''

To like effect is *Loud* v. *Pomona Land & Water Co.,* 153 U. S. 564, 577 (38 L. Ed. 822, 14 Sup. Ct. Rep, 928, 932, see, also, Rose's U. S. Notes), in which the court used the following language:

''In this case there is no ambiguity in the language of the contracts. The covenant and agreement of the land company is that '*after* the making of the payment and full performance of the covenants hereinafter to be made and performed by the party of the second part (Loud), the party of the first part (the land company) will, in consideration thereof, convey by deed of grant, bargain, and sale to the party of the second part, his heirs or assigns,' the described lands, together with the designated shares in the irrigation companies. A subsequent clause of the contract provides that 'this instrument is not and shall not be construed as a conveyance, equitable or otherwise, and until the delivery of the final deed of conveyance, or *tender of all payments precedent thereto,* the party of the second part, his heirs or assigns, shall have no title, equitable or otherwise, to said premises,' and it is further provided that time is of the essence of the contract.''

This is an instructive case and sums up all the American authorities on the subject up to the date of the opinion, which was rendered in 1893, and which is so logical and in accord with the language of the

contract that we are disposed to follow it here. To like effect see *Gale* v. *Best,* 20 Wis. 48; *Mayers* v. *Rogers,* 5 Ark. 417; *Stuyvesant* v. *Western Mortgage Co.,* 22 Colo. 28 (43 Pac. 144); *Woods* v. *Morgan,* 1 Morr. (Iowa) 179; *Hawley* v. *Bingham,* 6 Or. 76; *Sayre* v. *Mohney,* 35 Or. 141 (56 Pac. 526). In the latter case the court lays stress on the fact that the vendee received possession of the property as bearing upon the question as to whether or not the covenant to pay and the covenant to convey were to be construed as independent covenants. In the case at bar the defendant was, by the legal construction of the contract, entitled to the immediate possession of the property, inasmuch as the contract contained a clause providing for re-entry by the vendor in case of default: 39 Cyc. 1621, and notes.

Very respectable authority may be found holding views contrary to those above expressed, notably *Underwood* v. *Tew,* 7 Wash. 297 (34 Pac. 1100); *Hogan* v. *Kyle,* 7 Wash. 595 (35 Pac. 399, 38 Am. St. Rep. 910). *Stein* v. *Waddell,* 37 Wash. 634 (80 Pac. 184), is also cited by appellant, but the conditions there were different. Stein had brought a suit to declare a forfeiture of a contract of sale on account of nonpayment of installments of the purchase price, and did not allege a tender of a conveyance before suit. Forfeiture being a harsh remedy and not favored by the law, the court held that he should have made such tender before bringing his suit. It was incidentally remarked that the usual rule in such contracts was that the covenant to pay and the covenant to convey were dependent covenants, unless the terms of the contract clearly indicated the contrary, and that they attached little importance to the words "shall first pay" used in the covenant

of the vendee. What they would have held in a case where the vendee had given a negotiable promissory note for the purchase price and gone into possession of the property, as indicating the intention of the parties, does not appear because it was not in that case.

The object of language is not to conceal ideas, but to express, and where an instrument provides that one party shall *first* pay in order to be entitled to a deed it is logical to conclude, in the absence of other qualifying language, that it is intended that the payment must precede the giving of the deed. The word "first" does not mean "coincident with," or "at the same moment," either in law or logic. As the case stands here, the document pleaded by defendant says to defendant, in effect: "You must first pay the price evidenced by the note, and when that is paid plaintiff must make a deed." But defendant would have us construe this language so that the first thing to be done or tendered is the deed. It would seem that before defendant can be allowed to urge this defense to an action on a promissory note he should be required to plead that he has paid or offered to pay, or is ready and willing to perform his part of a plain agreement, or show some valid reason why he should not do so. Merely stating the conclusion of law, that plaintiff is "not able" to make the deed means nothing,—no legal reason why he is not able appearing.

10. We are unable to accept the reasoning of some of the courts that a covenant to pay, even if originally independent, becomes by some mysterious alchemy of the law dependent if the vendor allows the installments to run without collection until the last one is due. It is clearly opposed to the cases cited by us, including *Loud* v. *Pomona Land & Water*

*Co., supra,* and ought never to be applied where the vendee has given a negotiable promissory note for the whole purchase price, thereby indicating his intention to make an independent contract in respect to the payment.

The judgment is affirmed.

AFFIRMED.

BEAN, BROWN and McCOURT, JJ., concur.

BURNETT, J., took no part in the decision of this case.